**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| Southern Glazer's Wine and Spirits, LLC, | ) ) ) |
| Movant, | ) Case No.  3:26-mc-00001 |
| v. | ) ) ) |
| Favorite Brands, | ) ) ) |
| Respondent. | ) |
| Federal Trade Commission, | ) |
| Plaintiff, | ) *Underlying Action Pending in the* |
| v. | ) United States District Court for |
| Southern Glazer's Wine and Spirits, LLC, | ) the Central District of California |
| | ) Case No. 8:24-cv-02684-FWS-ADS |
| Defendant. | ) |

## MOVANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S BRIEF IN SUPPORT OF MOTION TO COMPEL

i

# TABLE OF CONTENTS

FACTUAL BACKGROUND ................................................................................. 3

LEGAL STANDARD ........................................................................................... 7

ARGUMENT ........................................................................................................ 8

    (a)    SGWS's Requests Are Relevant. ............................................................ 9

    (b)    SGWS's Requests Are Not Overbroad or Unduly Burdensome and
             Expensive. ............................................................................................. 13

    (c)    SGWS's Requests Are Proportional to the Needs of the Case. ............ 14

    (d)    The Protective Order Alleviates Favorite Brands' Confidentiality
             Concerns. ................................................................................................ 15

CONCLUSION .................................................................................................... 16

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.H. Robins Co. v. Fadely*,
    299 F.2d 557 (5th Cir. 1962) ..................................................................... 15

*Carr v. State Farm Mut. Auto. Ins. Co.*,
    312 F.R.D. 459 (N.D. Tex. 2015) ...................................................... 7, 13, 14

*Civic Ctr. Site Dev., LLC v. Certain Underwriters at Lloyd's London*
    *(Consortium #9226)*,
    2023 WL 5974843 (E.D. La. Sept. 14, 2023) ........................................... 16

*Covey Oil Co. v. Cont'l Oil Co.*,
    340 F.2d 993 (10th Cir. 1965) .................................................................. 10

*Deutsche Bank Nat'l Tr. Co. as Tr. for Ameriquest Mortg. Sec. Inc. v. Pink,*
    2019 WL 399533 (N.D. Tex. Jan. 31, 2019) ............................................. 9

*Dickerson v. Bailey*,
    336 F.3d 388 (5th Cir. 2003) ..................................................................... 4

*Dveirin v. State Farm Fire & Cas. Co.*,
    2025 WL 306333 (E.D. La. Jan. 27, 2025) ............................................... 16

*E.I. du Pont de Nemours & Co. v. F.T.C.*,
    729 F.2d 128 (2d Cir. 1984) ....................................................................... 4

*Fed. Trade Comm'n ex rel. Yost v. Educare Ctr. Servs., Inc.*,
    2020 WL 4334119 (W.D. Tex. Apr. 15, 2020) .......................................... 15

*Great Atl. & Pac. Tea Co. v. FTC*,
    440 U.S. 69 (1979) ............................................................................... 9, 10

*Infernal Tech., LLC v. Microsoft Corp.*,
    2019 WL 5388442 (E.D. Tex. May 3, 2019) ............................................. 16

*Infusion Res., Inc. v. Minimed, Inc.*,
    351 F.3d 688 (5th Cir. 2003) ..................................................................... 3

*J & J Sports Prods., Inc. v. Mandell Fam. Ventures, LLC*,
    2014 WL 1294128 (N.D. Tex. Mar. 31, 2014) .......................................... 13

*Lopez v. Don Herring Ltd.*,
  327 F.R.D. 567 (N.D. Tex. 2018) ............................................................ 13

*M-I LLC v. Stelly*,
  733 F. Supp. 2d 759 (S.D. Tex. 2010) ..................................................... 15

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*,
  894 F.2d 1482 (5th Cir. 1990) .................................................................. 9

*Merrill v. Waffle House, Inc.*,
  227 F.R.D. 467 (N.D. Tex. 2005) ......................................................... 8, 9

*Mirror Worlds Techs., LLC v. Apple Inc.*,
  2016 WL 4265758 (E.D. Tex. Mar. 17, 2016) ........................................ 16

*New Park Ent., LLC v. Elec. Factory Concerts, Inc.*,
  2000 WL 62315 (E.D. Pa. Jan. 13, 2000) .................................................. 8

*Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*,
  2025 WL 2432665 (N.D. Tex. Aug. 22, 2025)................................. 8, 11, 13

*Orchestrate HR, Inc. v. Trombetta*,
  178 F. Supp. 3d 476 (N.D. Tex. 2016) ...................................................... 8

*ROKiT Drinks, L.L.C. v. Landry's Inc.*,
  2025 WL 2269783 (5th Cir. Aug. 8, 2025) (per curiam)............................. 4

*S.E.C. v. Brady*,
  238 F.R.D. 429 (N.D. Tex. 2006) ............................................................ 13

*Seiferth v. Helicopteros Atuneros, Inc.*,
  472 F.3d 266 (5th Cir. 2006) .................................................................... 8

*Uinta Oil Ref. Co. v. Cont'l Oil Co.*,
  36 F.R.D. 176 (D. Utah 1964) ................................................................. 10

*United States v. U.S. Gypsum Co.*,
  438 U.S. 422 (1978)................................................................................. 10

*Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*,
  546 U.S. 164 (2006)............................................................................. 3, 12

*Water Craft Mgmt. LLC v. Mercury Marine*,
  457 F.3d 484 (5th Cir. 2006) .................................................................. 10

*Williams v. City of Dallas*,
    178 F.R.D. 103 (N.D. Tex. 1998) ....................................................................... 7

**Statutes & Constitutional Provisions**

15 U.S.C. § 13 ..................................................................................................... 12

15 U.S.C. §13(a) ........................................................................................... 3, 4, 5

15 U.S.C. §13(a)-(b) ............................................................................................. 4

Tex. Alco. Bev. Code § 6.03(i) ............................................................................ 4

U.S. Const. amend. XXI ....................................................................................... 4

**Rules**

Fed. R. Civ. P. 26................................................................................................... 7

Fed. R. Civ. P. 26(b)(1) ................................................................................... 7, 14

Fed. R. Civ. P. 37................................................................................................... 2

Fed. R. Civ. P. 45............................................................................................... 2, 7

**Other Authorities**

8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal
    Practice and Procedure § 2043 (2d ed. 1994) .............................................. 15

## INTRODUCTION

On August 18, 2025, Southern Glazer's Wine and Spirits, LLC ("SGWS") served a subpoena duces tecum on Favorite Brands, a Texas-based alcohol distributor.  Like Favorite Brands, SGWS distributes wine and spirits products across the United States, including across Texas and New Mexico.  Currently, SGWS is defending a suit brought by the Federal Trade Commission ("FTC") that alleges SGWS engaged in discriminatory pricing practices in violation of the Robinson-Patman Act ("RPA"), a bygone act that has not been enforced in a quarter century.  *FTC v. Southern Glazer's Wine and Spirits, LLC*, No. 8:24-cv-02684-FWS-ADS (C.D. Cal. Dec. 12, 2024).  The FTC seeks a nationwide injunction that would force SGWS to change its pricing practices.  If granted, this sweeping relief will interfere with the already heavily regulated beverage alcohol industry, to consumers' detriment.

The documents SGWS seeks from Favorite Brands are relevant to SGWS's defenses, not unduly burdensome, and proportional to the needs of the case.  The subpoena seeks documents concerning Favorite Brands' wine and spirits purchases and sales, pricing and accounting practices, and interactions with suppliers who manufacture alcohol.  *See* Ex. 1 (SGWS Subpoena).  SGWS expects these documents will support its arguments that (1) any retailers to whom it charged different prices for the same goods do not compete, (2) SGWS's pricing practices are justified by market conditions, differences in the cost of serving different retailers, and SGWS's legitimate efforts to meet competition, and (3) that alcohol sales from distributors to retailers occur outside of interstate commerce and are not subject to the RPA.  The breadth of SGWS's requests mirrors the wide scope of the FTC's

1

allegations.  To date, the FTC has identified over 17 million different pairs of allegedly discriminatory sales by SGWS to retailers in 30 states since 2018, each of which the FTC contends is probative of an individual violation of the RPA.  Almost half of these—around 8 million—are in Texas.  Given Favorite Brands' significant business in Texas, data on Favorite Brands' wine and spirits sales and purchases will be particularly relevant to SGWS's defenses.

In response to SGWS's subpoena, Favorite Brands sent a letter and response objecting wholesale and indicating no documents would be produced.  *See* Ex. 2 (11/13/2025 Favorite Brands Letter and R&O).  Counsel for SGWS conferred with counsel for Favorite Brands three times before filing this motion and offered to explore narrowing specific requests in the interest of compromise.  Favorite Brands still refuses to produce documents on the grounds stated in its letter.

Favorite Brands' vague objections do not justify Favorite Brands' wholesale refusal to produce documents.  The information SGWS seeks is relevant and proportional to its defenses, and Favorite Brands offers no support for its conclusory claims of burden and expense.  Moreover, the protective order in the underlying litigation will maintain the confidentiality of Favorite Brands' information, *see* Ex. 1, Exhibit C (Amended Stipulated Protective Order).  SGWS thus respectfully moves the Court pursuant to Federal Rules of Civil Procedure 37 and 45 to compel Favorite Brands to produce all existing documents responsive to its subpoena.

## FACTUAL BACKGROUND

SGWS is a family-owned distributor of alcoholic beverages, operating in forty-seven markets across the United States.  SGWS purchases beverages from suppliers and subsequently sells them to retailers of all sizes, from large chains such as Costco to local gas stations.  Over the objection of now-Chairman Andrew Ferguson and former Commissioner Melissa Holyoak, the FTC filed a complaint against SGWS in the Central District of California on December 12, 2024.  The complaint alleges that since 2018, SGWS has engaged in price discrimination in millions of transactions, in violation of Section 2(a) of the RPA and Section 5 of the FTC Act, by selling various brands of wine and spirits to independent retailers at higher prices than to chain customers.  *See FTC v. Southern Glazer's Wine and Spirits, LLC,* Compl. (ECF 57) at ¶¶ 1-6, 85-88 (attached to Ex. 1 as Exhibit A).

Enacted in 1936, Section 2(a) of the RPA seeks to prevent anticompetitive practices by prohibiting sellers from pricing commodities differently to buyers.  15 U.S.C. §13(a). To establish a violation, a party must show that (1) the challenged sales were made in interstate commerce; (2) the commodities sold were of the same grade and quality; (3) the seller discriminated in price between the disfavored and the favored purchasers; and (4) the discrimination has a prohibited effect on competition.  *Infusion Res., Inc. v. Minimed, Inc.*, 351 F.3d 688, 692 (5th Cir. 2003).  The last element ensures that not all pricing discrimination is banned—only that which threatens to injure competition.  *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 176 (2006).  Changes in price can be legitimate where they are made "in response to changing conditions affecting the market

for or the marketability of the goods." 15 U.S.C. §13(a). The RPA offers defendants two affirmative defenses to rebut a prima facie case: differences in price are permissible where (1) they account for differences in cost due to the manufacture, sale, or delivery of a commodity, or (2) they reflect an effort to meet competition. 15 U.S.C. §13(a)-(b). Similarly, Section 5 of the FTC Act aims to prevent anticompetitive practices. However, absent evidence of antitrust law violations or collusive or similar conduct, a party's practices are not considered "unfair" under Section 5. *E.I. du Pont de Nemours & Co. v. F.T.C.*, 729 F.2d 128, 140 (2d Cir. 1984).

As the FTC acknowledges in its complaint, the market for alcoholic beverages is unique. It is a "non-integrated distribution system regulated by each state and requiring three distinct tiers." Compl. ¶ 24 (Ex. 1 at Exhibit A). Within this three-tiered system, suppliers of alcohol (such as distillers and vintners) may sell wine and spirits products only to distributors (the second tier), who in turn re-sell them to retailers (the third tier), who finally sell the products to consumers. *See id.; see generally ROKiT Drinks, L.L.C. v. Landry's Inc.,* 2025 WL 2269783, at *3 (5th Cir. Aug. 8, 2025) (per curiam) (quoting *Dickerson v. Bailey*, 336 F.3d 388, 397 (5th Cir. 2003)) (explaining the strict separation of ownership and operations between manufacturers, wholesalers, and retailers that prevents their vertical integration).

Under the Twenty-First Amendment, states have unique constitutional authority to regulate alcohol sales and do so in varied ways. *See* U.S. Const. amend. XXI. For example, several states, including Texas, impose "come to rest" laws mandating that alcohol become part of a distributor's in-state inventory before it is sold to retailers. *See* Tex. Alco. Bev.

4

Code § 6.03(i) ("It is also the public policy of this state… to maintain and enforce the three-tier system (strict separation between the manufacturing, wholesaling, and retailing levels of the industry)").

Notwithstanding the state-specific nature of the market, the FTC seeks a sweeping nationwide injunction forcing SGWS to change its pricing practices. SGWS has pressed the FTC to identify specific transactions the FTC alleges violate the RPA and served an interrogatory requesting that the FTC describe each alleged instance of unlawful price discrimination with specificity. In stages, over several months, the FTC provided some of the requested information, eventually identifying over 17 million allegedly discriminatory transactions in 30 states. SGWS understands the FTC may supplement this list of transactions further.

SGWS denies the FTC's allegations. SGWS argues that its practices are lawful because any differences in price are cost-justified, designed to meet competition, and/or responsive to changed market conditions. SGWS intends to show that many of the millions of transactions that the FTC has alleged to date pair retailers that do not actually compete and so cannot give rise to an RPA claim. *See* 15 U.S.C. § 13(a). SGWS's pricing is pro-competitive, to the benefit of end consumers of beverage alcohol. SGWS also maintains that the sales at issue are not in interstate commerce—an essential element of the RPA claim—because SGWS does not sell alcohol across state lines and instead abides by the various states' "come to rest" laws in the tightly regulated alcohol industry.

To help support these defenses, SGWS issued subpoenas to eleven beverage distributors in August 2025. Some of these are other large national players like SGWS.

5

Other distributors have significant presences in the five exemplar states that the FTC focuses on in its complaint, which include Texas. Favorite Brands is a significant operator in both Texas and New Mexico, with 13 warehouses and over 1,200 employees.[1]

The subpoenas SGWS served on distributors each include the same fourteen requests. *See* Ex. 1. The requests seek transaction data for other distributors' purchases and sales of wine and spirits, and other information that would support and give context to that data, such as documents that show how the distributor determines its pricing, manages its costs, and complies with state laws. *See* Ex. 1. This information will help SGWS demonstrate the pro-competitive nature of its pricing practices and provide support for the affirmative defenses recognized under the Act. Specifically, it will showcase legitimate, cost-based reasons for differences in prices to different retailers and demonstrate that SGWS's pricing practices reflect market conditions and are a good-faith effort to meet competition. The requests seek documents "from January 1, 2020, to present," related to "distilled spirits and wine…not…beer." *See* Ex. 1, Instructions ¶ 3, Definitions ¶¶ 2, 12.

On September 3, 2025, counsel for Favorite Brands and SGWS met to discuss the subpoena. During this meeting, SGWS provided background on the underlying case against the FTC and explained SGWS's reasons for serving the subpoena and its need for the requested data. SGWS gave an extension to September 17, 2025 for Favorite Brands to respond to the subpoena. On September 15, counsel for Favorite Brands followed up by email and represented that "[w]e are going to produce some responsive documents but we

---

[1]    Favorite Brands, https://www.fbdistributing.com/ (last accessed Jan. 7, 2026).

will require more time past September 17, 2025." Ex. 2 (9/15/25 C. Kirchner Eml. to R. Powell). On September 17, 2025, Favorite Brands and SGWS met again and had a productive conversation. On November 13, 2025, Favorite Brands reversed course. Favorite Brands sent a letter explaining that after "further consideration" Favorite Brands "declines to produce documents that may be responsive to the subpoena" because it would be "would be adverse and harmful to its business interests." Ex. 3 (11/13/25 C. Kirchner Ltr. to R. Powell). Favorite Brands also included a set of responses and objections to the subpoena that objected to the requests largely on the grounds of confidentiality. *See* Ex. 4 (11/13/25 Favorite Brands Responses & Objections). Nonetheless, the parties met for a third time on November 21, 2025, and SGWS renewed its offer to narrow the scope of its requests. On December 4, 2025, SGWS yet again offered to negotiate a narrowed scope of production. *See* Ex. 5 (12/4/25 & 12/30/25 C. Kirchner & R. Powell Eml. Exchange). On December 30, 2025, Favorite Brands declined, confirming it "will not be producing any responsive documents at this time." *See* Ex. 5. Accordingly, SGWS now respectfully moves this Court to compel Favorite Brands to produce all existing documents responsive to SGWS's requests.

## LEGAL STANDARD

A Rule 45 subpoena is subject to the same scope of discovery as is permitted under Rule 26. *Williams v. City of Dallas*, 178 F.R.D. 103, 110-11 (N.D. Tex. 1998). Rule 26(b)(1) provides that a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). *See also Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459,

464-65 (N.D. Tex. 2015). For antitrust cases, courts construe discovery rules more liberally. *Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, 2025 WL 2432665, at \*2 (N.D. Tex. Aug. 22, 2025). "This means the 'burden or cost of providing the information sought is less weighty a consideration than in other cases.'" *Id.* (quoting *New Park Ent., LLC v. Elec. Factory Concerts, Inc.*, 2000 WL 62315, at \*3 (E.D. Pa. Jan. 13, 2000)).

Relevancy for purposes of discovery is defined broadly and interpreted liberally to encompass any matter that could lead to or bear on any issue in the case. *Merrill v. Waffle House, Inc.,* 227 F.R.D. 467, 470-71 (N.D. Tex. 2005). A party objecting to discovery bears the burden of making specific objections showing that discovery fails the proportionality calculation and is of such marginal relevance that potential harm would outweigh the presumption in favor of broad disclosure. *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 505 (N.D. Tex. 2016); *Merrill,* 227 F.R.D. at 470-71. District courts have broad discretion in controlling discovery. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006).

## ARGUMENT

Favorite Brands' arguments that the subpoena requests are irrelevant, overbroad, unduly burdensome, and seek confidential information are without basis. *See* Ex. 4. The information sought is relevant and proportional to the needs of the broad case the FTC has brought against SGWS because it will help SGWS rebut FTC's prima facie case and support SGWS's meeting competition and cost justification affirmative defenses. SGWS

cannot obtain this information from any other source, and the protective order addresses any confidentiality concerns.  The Court should compel production.

### (a)    SGWS's Requests Are Relevant.

At the discovery stage, the threshold for relevance is "extremely low."  *Deutsche Bank Nat'l Tr. Co. as Tr. for Ameriquest Mortg. Sec. Inc. v. Pink,* 2019 WL 399533, at *5 (N.D. Tex. Jan. 31, 2019).  Where relevance is in doubt, a court should be permissive in allowing discovery "[u]nless it is clear that the information sought can have *no possible bearing* on" the issues of the case.  *Merrill,* 227 F.R.D. at 470 (emphasis added).  The party resisting discovery carries the burden to show specifically how each request is irrelevant. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).

Favorite Brands argues the information requested is not relevant for the sole reason that "it is believed" that SGWS's market share "is many times larger measured by revenue" than Favorite Brands' market shares in Texas and New Mexico. Ex. 4 at 3.  Relative market share has no bearing on whether Favorite Brands' documents are relevant to SGWS's case against the FTC and should not prevent the Court from compelling production.

*First*, the requested documents are relevant to SGWS's statutory defenses of meeting competition and cost justification.  To make out a meeting-competition defense, SGWS must show "the existence of facts which would lead a reasonable and prudent person to believe that the granting of a lower price would in fact meet the equally low price of a competitor."  *Great Atl. & Pac. Tea Co. v. FTC*, 440 U.S. 69, 82 (1979) (citation omitted).  "A good-faith belief, rather than absolute certainty, that a price concession is being offered to meet an equally low price offered by a competitor is sufficient to satisfy

the § 2(b) defense." *Id.* (citations omitted); *see also United States v. U.S. Gypsum Co.*, 438 U.S. 422, 454 (1978) ("[G]ood faith is a flexible and pragmatic, not technical or doctrinaire, concept") (citation omitted). Several of SGWS's requests relate to Favorite Brands' pricing data, which will provide the baseline for SGWS to show its prices match competitors'. *See* Ex. 1, Requests 1, 3, 7-9.

Favorite Brands cannot oppose discovery on the grounds that SGWS must have been aware of Favorite Brands' prices for those prices to be relevant. A good-faith belief that a competitor was offering a lower price is sufficient for a meeting competition defense. *Water Craft Mgmt. LLC v. Mercury Marine*, 457 F.3d 484, 489 (5th Cir. 2006) (explaining that a good-faith belief of price discrimination is sufficient for a meeting-competition defense, as the inquiry is "flexible and pragmatic" rather than requiring absolute certainty, and the defense may be satisfied even by efforts short of interseller verification); *see also Uinta Oil Ref. Co. v. Cont'l Oil Co.*, 36 F.R.D. 176, 180-81 (D. Utah 1964) (stating it "may well be" that the meeting competition "defense does not require a competitor to have actual knowledge of the identity and price of the competitor whose price is being met" and "pricing data…are clearly relevant" to discovery).

Further, Federal courts have permitted antitrust defendants to subpoena competitors' purchase, sales, and pricing data to solidify a meeting competition defense. *See, e.g.*, *Uinta Oil*, 36 F.R.D. at 180-81 (denying non-party competitor's motion to quash defendant's subpoena seeking purchase and sales prices); *Covey Oil Co. v. Cont'l Oil Co.*, 340 F.2d 993, 997 (10th Cir. 1965) ("The wholesale price and volume of admitted competitors directly pertain to… the Robinson-Patman Act charges and to the defenses

asserted against those charges"); *Open Cheer & Dance* 2025 WL 2432665, at *2 (ordering competitor to provide responses to interrogatories involving revenue, expenses, and basis for market share calculations, as "broad discovery for a defendant is necessary to defend against conspiracy or monopolization allegations and damages.").

It is of no consequence that Favorite Brands and SGWS distribute different products. Generally, because of exclusivity agreements, there is only one distributor of an alcohol product in a given state. But different alcohol products compete[2] and the prices of competing products are relevant. A Texas customer considering brut champagne at Total Wine & More in College Station can choose between purchasing the Piper Heidsieck Favorite Brands distributes (750 ml, $42.97) and the Moet & Chandon SGWS distributes (750 ml, $42.29).[3] Likewise, retailers negotiating with SGWS and Favorite Brands can play those products against one another to achieve the best price.

---

[2] *See generally* Daniel M. Micu et al., *Competitive Advantage in the World of Wine – An Analysis of Differentiation Strategies Developed by Sectoral Brands in the Global Market*, Foods (May 2025), available at https://www.mdpi.com/2304-8158/14/11/1858 (accessed Jan. 6, 2026) (describing how global wine markets are "highly competitive," and providing examples of how wine brands attempt to differentiate to gain a competitive advantage); Bartender Spirits Awards, *Competition in the Spirits Industry: A Primer*, https://bartenderspiritsawards.com/en/blog/insights-1/competition-in-the-spirits-industry-a-primer-603.htm (accessed Jan. 6, 2026) (describing competition between established, heritage spirits brands and emerging craft distilleries).

[3] Piper Heidsieck Brut Champagne, Total Wine & More – College Station, TX, https://www.totalwine.com/wine/deals/champagne-sparkling-wine/champagne/brut/piper-heidsieck-brut-champagne/p/451750?s=537&igrules=true (accessed Jan. 7, 2026) and Moet & Chandon Imperial Brut Champagne, Total Wine & More – College Station, TX, https://www.totalwine.com/wine/gift-center/deals/champagne-sparkling-wine/champagne/brut/moet-chandon-imperial-brut-champagne/p/449750?s=537&igrules=true (accessed Jan. 7, 2026); Piper Heidsieck, Favorite Brands, https://www.fbdistributing.com/product-page/piper-heidsieck (accessed Jan. 7, 2026).

SGWS's requests are also relevant to SGWS's cost-justification defense. *See, e.g.*, Ex. 1, Requests 5 and 6. The RPA exempts as legal price "differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered." 15 U.S.C. § 13. SGWS seeks to prove the differences in prices it charges to chain retail and independent retailers are justified by cost savings and consistent with industry practice. The data SGWS requests about costs in the industry will support SGWS's argument that its price differentials are justified by the costs of goods sold. *See, e.g.*, Ex. 1, Requests 5 and 6.

*Second*, SGWS's requests are relevant to SGWS's rebuttal of the FTC's prima facie case. To sustain an RPA claim, the FTC must show that SGWS's pricing practices had an anti-competitive effect on the market. *See Volvo*, 546 U.S. at 176. The FTC alleges injury by pairing transactions from two retailers—one favored and one disfavored—and pointing to differences in SGWS's prices to those retailers. SGWS believes several of the retailers the FTC pairs are not in competition and therefore any difference in prices charged to them would not violate the RPA. Information produced in response to SGWS's requests—including information on the array of products sold to retailers, volumes, and prices—will help show various classes of retailers have different business models, order to meet different needs, and do not necessarily compete for the same end customer by virtue of selling alcohol. *See* Ex. 1, Requests 1, 6-8.

Favorite Brands makes no credible argument why its documents are not relevant to SGWS's ability to prove the above defenses. It alleges that its smaller market share relative

to SGWS renders SGWS's requests irrelevant, but it fails to articulate why that would be the case. Regardless of market share, both SGWS and Favorite Brands distribute comparable wine and spirits in Texas and New Mexico; thus, they compete.[4] The Court should find Favorite Brands documents are relevant.

**(b)    SGWS's Requests Are Not Overbroad or Unduly Burdensome and Expensive.**

Favorite Brands cannot refuse to produce any documents based on conclusory claims of burden. *See* Ex. 4 (claiming the subpoena is "overly broad in scope and time"). A party resisting discovery must show how the requested discovery was overly broad or unduly burdensome by submitting affidavits or offering evidence to specifically support the nature of the burden. *Carr*, 312 F.R.D. at 463. Broad, non-specific objections are unacceptable, as they are "almost impossible to assess on the merits." *J & J Sports Prods., Inc. v. Mandell Fam. Ventures, LLC*, 2014 WL 1294128, at *2 (N.D. Tex. Mar. 31, 2014) (quoting *S.E.C. v. Brady*, 238 F.R.D. 429, 437-38 (N.D. Tex. 2006)). Notably, "[s]erving unsupported and boilerplate or stock objections does not preserve or accomplish anything other than waiver and subjecting the responding party to sanctions." *Open Cheer & Dance*, 2025 WL 2432665, at *1 (quoting *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 582 (N.D. Tex. 2018)).

---

[4]    Even if market share were an appropriate factor to consider when assessing relevance (it is not), Favorite Brands undersells its size and scope: it maintains 13 warehouses and more than 1,200 employees across the two states. *See* Favorite Brands, https://www.fbdistributing.com/ (last accessed Jan. 7, 2026).

Favorite Brands has not provided any specifics about the cost or time needed to produce documents in response to the subpoena that would substantiate its burden claim. It states only that the subpoena "seeks responsive documents over a nearly 6-year period and covers a vast geographical area." Ex. 4. But SGWS has limited its request to the time period of the FTC's claims and requests documents only in the two states in which Favorite Brands operates. Favorite Brands has not attempted to specify the burden SGWS's requests impose, let alone explain why such burden is undue. Such bare claims cannot satisfy Favorite Brands' burden of showing the subpoena is overbroad or unduly burdensome.

Moreover, Favorite Brands had multiple opportunities to engage with SGWS about ways to potentially narrow SGWS's requests and refused. SGWS offered to negotiate concerning the scope of production, but Favorite Brands refused to negotiate, instead objecting to the subpoena wholesale. *See* Ex. 3, 4. This Court should not reward Favorite Brands for its unwillingness to engage with SGWS to resolve its concerns about burden and breadth.

### (c)     SGWS's Requests Are Proportional to the Needs of the Case.

SGWS's subpoena requests are proportional to the broad case the FTC has brought. Proportionality is determined by "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). *See also Carr*, 312 F.R.D. at 465. SGWS seeks information relevant to key

14

elements of the FTC's case and SGWS's defenses. To the extent Favorite Brands perceives the requests as broad, they are proportional to FTC's allegations, which challenge millions of sales in 30 states, for thousands of different products, over an eight-year period.

Each proportionality factor favors production. The stakes of this case are high: the FTC seeks to enjoin on a nationwide basis, and SGWS's pricing practices are common in the industry. Such an injunction would require SGWS to radically change its business practices and will harm consumers by increasing prices. Discovery from competitors is crucial for resolving issues in this case, such as whether SGWS's pricing practices are consistent with those of its competitors, pro-competitive, and geared toward meeting competition.

### (d)    The Protective Order Alleviates Favorite Brands' Confidentiality Concerns.

Finally, Favorite Brands cannot refuse to produce documents on the basis that the information sought is confidential. Confidentiality "is not a basis upon which discovery can be resisted." *Fed. Trade Comm'n ex rel. Yost v. Educare Ctr. Servs., Inc.*, 2020 WL 4334119, at *7 (W.D. Tex. Apr. 15, 2020) (citing *A.H. Robins Co. v. Fadely*, 299 F.2d 557, 561 (5th Cir. 1962)) (ordering production of pricing and sales information despite claims of confidentiality). The wide latitude of discovery applies even to trade secret matters, and "the key issue is not *whether* the information will be disclosed but under what conditions." *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 804 (S.D. Tex. 2010) (quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2043 (2d ed. 1994)). Thus, courts in this circuit routinely hold that protective orders are sufficient

to address parties' confidentiality concerns.  *See, e.g., Infernal Tech., LLC v. Microsoft Corp.*, 2019 WL 5388442, at *2 (E.D. Tex. May 3, 2019) (granting the motion to compel because "there is no reason… confidential information cannot be adequately protected via the Protective Order"); *Mirror Worlds Techs., LLC v. Apple Inc.*, 2016 WL 4265758, at *1 (E.D. Tex. Mar. 17, 2016) (noting the protective order adequately protects confidentiality); *Dveirin v. State Farm Fire & Cas. Co*., 2025 WL 306333, at *9-10 (E.D. La. Jan. 27, 2025) (ordering production of invoices and payment logs with third parties as the protective order sufficiently addresses proprietary or confidentiality concerns); *Civic Ctr. Site Dev., LLC v. Certain Underwriters at Lloyd's London (Consortium #9226)*, 2023 WL 5974843, at *9-10 (E.D. La. Sept. 14, 2023) (overruling confidentiality objections in light of the protective order).

Here, there is a Protective Order entered by the Court that adequately protects any sensitive information.  Any confidential or proprietary information or trade secrets would only be seen by limited parties per the Protective Order.  Thus, Favorite Brands' concern that production would be harmful to Favorite Brands' or third parties' business and interests is unfounded.  *See* Ex. 4.

## CONCLUSION

For all these reasons, SGWS respectfully requests that the Court grant the motion to compel and require Favorite Brands to produce all existing documents responsive to SGWS's subpoena.

Dated this 13th day of January, 2026

*/s/ Christopher A. Thompson*
**JACKSON WALKER LLP**
Christopher A. Thompson
State Bar No. 24003049
cthompson@jw.com
Carl C. Butzer
State Bar No. 03545900
cbutzer@jw.com
Minoo Blaesche
State Bar No. 24075102
mblaesche@jw.com
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6000
Facsimile: (214) 953-5822

**KIRKLAND & ELLIS LLP**

Matthew S. Owen, P.C. (*pro hac vice forthcoming*)
matt.owen@kirkland.com
T.J. McCarrick (*pro hac vice forthcoming*)
tj.mccarrick@kirkland.com
K. Ross Powell (*pro hac vice forthcoming*)
ross.powell@kirkland.com
1301 Pennsylvania Ave, NW
Washington, D.C. 20004
Telephone: 202-389-5000

17

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of January, 2026, a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF system and a copy served by electronic email on counsel for Favorite Brands, who had previously agreed to accept service in this manner.

/s/ *Christopher A. Thompson*
Christopher A. Thompson

18